IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLA JEAN WEIMER, ) | |
| ) | Case No. 2:24-cv-00787 |
| *Petitioner*, ) | |
| ) | |
| v. ) | District Judge Arthur J. Schwab |
| ) | Magistrate Judge Kezia O. L. Taylor |
| FAYETTE COUNTY COURTHOUSE ) | |
| and DISTRICT ATTORNEY OF ) | |
| FAYETTE COUNTY, ) | |
| ) | |
| *Respondents*. | |

**REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

For the following reasons, it is respectfully recommended that this case be dismissed for Petitioner's failure to prosecute.

**II.   REPORT**

**A.   Procedural History**

Petitioner initiated the above-captioned matter in May 2024, with the submission of a form petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. ECF No. 1. The case was administratively closed by a deficiency order entered on June 3, 2024, and it was subsequently reopened when Petitioner paid the filing fee on June 7, 2024. ECF Nos. 2-3, 5. As part of the Court's order entered on June 3, 2024, Petitioner was directed to resubmit her petition on the form used for actions under 28 U.S.C. § 2254, a copy of which was enclosed with that order. ECF No. 2. The Court noted that Petitioner's failure to comply with the order by July 3, 2024, would be construed as an indication that she no longer desired to continue with this case. *Id*. When that

1

deadline passed, the Court entered an order to show cause, which informed Petitioner that this case would be dismissed if she did not submit her petition on the proper form by August 12, 2024. ECF No. 6. As of today, Petitioner has not submitted her petition on the proper form.

**B. Discussion**

Rule 41(b) of the Federal Rules of Civil Procedure addresses the involuntary dismissal of an action or a claim, and, under this Rule, "a district court has authority to dismiss an action *sua sponte* if a litigant fails to prosecute or to comply with a court order." *Qadr v. Overmyer*, No. 15-3090, 642 F. App'x 100, 102 (3d Cir. 2016) (*per curiam*) (citing Fed. R. Civ. P. 41(b)); *see also Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 871 (3d Cir. 1994) ("The Supreme Court affirmed, stating that a court could dismiss *sua sponte* under Rule 41(b).").

The Third Circuit Court of Appeals has stated that "a district court dismissing a case *sua sponte* 'should use caution in doing so because it may not have acquired knowledge of the facts it needs to make an informed decision.'" *Qadr*, 642 F. App'x 100 at 103 (quoting *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008)). Before engaging in a *sua sponte* dismissal, "the district court 'should provide the plaintiff with an opportunity to explain his reasons for failing to prosecute the case or comply with its orders.'" *Id*. (quoting *Briscoe*, 538 F.3d at 258).

**1. The *Poulis* Factors**

In *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), the Third Circuit Court of Appeals set forth the following six factors to be weighed in considering whether dismissal is proper under Rule 41(b):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which

entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Id*. at 868 (emphasis omitted). In balancing the *Poulis* factors, no single factor is dispositive, nor do all factors need to be satisfied to result in dismissal of the complaint. *Briscoe*, 538 F.3d at 263. However, in determining whether a dismissal is warranted, the Court must analyze the factors in light of the "strong policy favoring decisions on the merits." *Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019). The Third Circuit has emphasized that "dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court," and that they "must be a sanction of last, not first, resort." *Poulis*, 747 F.2d at 867-68, 869 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). "Cases should be decided on the merits barring substantial circumstances in support of the contrary outcome." *Hildebrand*, 923 F.3d at 132. While not common, application of the *Poulis* factors is also appropriate in habeas cases. *Harlacher v. Pennsylvania*, 3:CV-10-0267, 2010 WL 1462494, at *3 (M.D. Pa. Mar. 12, 2010), *report and recommendation adopted*, CIV.A 3:CV-10-0267, 2010 WL 1445552 (M.D. Pa. Apr. 9, 2010) (applying *Poulis* to a habeas case).

**2. Application of the *Poulis* Factors**

    **a. The extent of the party's personal responsibility.**

"[I]n determining whether dismissal is appropriate, we look to whether the party bears personal responsibility for the action or inaction which led to the dismissal." *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994). In determining personal responsibility for the delay, the Court must distinguish "between a party's responsibility for delay and counsel's responsibility." *Hildebrand*, 923 F.3d at 133 (citing *Poulis*, 747 F.2d at 868). A plaintiff is not conjecturally responsible for her counsel's delay. *Id*. Any doubt as to personal

responsibility should be resolved "'in favor of reaching a decision on the merits.'" *Id*. at 138 (quoting *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002)).

Here, Petitioner is proceeding *pro se*, so the responsibility for failing to comply with orders, including her obligation to submit her petition on the proper form, is hers alone. Thus, this factor weighs in favor of dismissal.

### b. **Prejudice to the adversary.**

Prejudice to the adversary is a substantial factor in the *Poulis* analysis; but like any other factor, it is not dispositive. *Hildebrand*, 923 F.3d. at 134. "Relevant examples of prejudice include 'the irretrievable loss of evidence[] [and] the inevitable dimming of witnesses' memories.'" *Id*. (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984)). A party is not required "to show 'irremediable' harm for [this factor] to weigh in favor of dismissal." *Id.* (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)). If the opposition is unable to prepare "a full and complete trial strategy" then there is sufficient prejudice to favor dismissal. *Id*. (citation omitted).

Respondents have not yet been served with the habeas petition. Thus, there is no indication that any Respondent has been prejudiced by Petitioner's conduct. Thus, this factor does not weigh in favor of dismissal.

### c. **A history of dilatoriness.**

A history of dilatoriness is generally established by repeated "delay or delinquency." *Adams*, 29 F.3d at 874. While once or twice is normally insufficient, this factor weighs in favor of dismissal where the plaintiff has a history of repeated delay. *Hildebrand*, 923 F.3d at 135 (citation omitted). In addition to repeated acts, "extensive" delay can also create a history of dilatoriness. *Adams*, 29 F.3d at 874. A "failure to prosecute" does not require that plaintiff take

affirmative "steps to delay the trial … It is quite sufficient if [he/she] does nothing …. " *Id*. at 875 (citation omitted).

"While extensive delay may weigh in favor of dismissal, 'a party's problematic acts must be evaluated in light of its behavior over the life of the case.'" *Hildebrand*, 923 F.3d at 135 (quoting *Adams*, 29 F.3d at 875). Thus, where a plaintiff has not been previously delinquent the weight given to even a long delay should be mitigated. *Id*.

While Petitioner promptly paid the filing fee when directed to do so, she has refused to comply with the Court's order to resubmit her petition on the appropriate form. This is sufficient evidence, in this Court's view, to indicate that Petitioner does not intend to proceed with this case in a timely manner. Thus, this factor weighs marginally in favor of dismissal.

### d. **Whether the party's conduct was willful or in bad faith.**

In determining if plaintiff's conduct constituted willful or bad faith, the "court should look for 'the type of willful or contumacious behavior' that can be characterized as 'flagrant bad faith,' such as [a case history of] failing to answer interrogatories for nearly a year and a half, demanding numerous extensions, ignoring admonitions by the court, and making false promises to correct delays." *Id*. (citing *Scarborough*, 747 F.2d at 875 (citation omitted)). "Willfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 875. Although "[a] lengthy delay reflects 'inexcusable negligent behavior,' *id*. at 876, . . . that behavior alone does not rise to the level of willfulness or bad faith." *Hildebrand*, 923 F.3d at 135. Finally, "[b]ecause the harsh sanction of dismissal should serve to deter bad faith or self-serving behavior, and because of our policy of favoring decisions on the merits, [in the absence of evidence] that the delay was not effectuated willfully or in bad faith, [this factor] should weigh against dismissal." *Id*. at 136.

There is no indication on this record that Petitioner's failure to comply with the Court's orders is the result of any excusable neglect. The Court's orders sent to Petitioner at her address of record were not returned as undeliverable, so there is no indication that Petitioner failed to receive the orders. The conclusion that Petitioner's failure is willful is inescapable. Therefore, this factor weight in favor of dismissal.

### e. **Effectiveness of sanctions other than dismissal.**

A district court must thoroughly consider "alternative sanctions before dismissing a case with prejudice." *Id*. (citing *Briscoe*, 538 F.3d at 262). The court should also provide an analysis of effectiveness sufficient "to honor [the] longstanding tradition of favoring decisions on the merits." *Id*. In so doing, the court should be mindful that "[a]lternatives are particularly appropriate when the plaintiff has not personally contributed to the delinquency." *Poulis*, 747 F.2d at 866 (citations omitted). "[A]lternative sanctions need only be effective toward mitigating the prejudice caused by dilatory behavior or delinquency." *Hildebrand*, 923 F.3d at 136. They are not required to be "completely ameliorative." *Id*.

There is no indication on this record that imposition of costs or fees would be an effective sanction. Therefore, the Court can see no alternative sanction that would be appropriate other than dismissal.

### f. **Meritoriousness of claim or defense.**

The petition that was filed in this case appears to challenge Petitioner's judgment of sentence out of Fayette County Court of Common Pleas at CP-26-CR-0001731-2021 ("1731-2021"). The PCRA court set forth the relevant facts and procedural history of that case as follows:

> On May 14, 2021, [Petitioner] was at a residence in Connellsville, Pennsylvania at about 6:00 P.M. attempting to enter it without permission of the residents. At the time she attempted to enter the residence, she was under the influence of alcohol. The residence [Petitioner] was attempting to enter without

6

> permission was the home of the adults who had adopted several of her children. She was attempting to visit the youngest two children. The residents contacted the police. When the police arrived, [Petitioner] informed the police that she went to the residence where her children resided and wanted to see them. [Petitioner] informed the police that when she arrived, she sat in her car in the driveway and drank from a bottle of liquor.
>
> The resident of the home informed the police that [Petitioner] had tried to enter the residence while screaming and shouting. The resident was able to prevent her from entering. While the resident was trying to keep [Petitioner] from entering, [Petitioner] was yelling at the children to break the door of the house down. When [Petitioner] was placed in the patrol car, she demanded that her children break her out of the patrol car also.
>
> On October 12, 2021, [Petitioner] entered a plea to the charges of Criminal Trespass and Public [Drunkenness] and received a term of probation with restrictive conditions for thirty (30) months with three hundred and sixty (360) days to be served on house arrest. [Petitioner] failed to abide by the terms and conditions of her sentence of house arrest with electronic monitoring. On May 21, 2022, [Petitioner] cut off her electronic monitoring device and was unable to be contacted. On June 15, 2022, after determining that [Petitioner] had violated the terms and conditions of house arrest and also for removing her electronic monitor, the [c]ourt revoked her Probation with Restrictive Conditions and sentenced her to fifteen (15) months to thirty (30) months in a state correctional facility.

ECF No. 4-4 at 2-4.

Petitioner does not set forth any specific claims in her petition, but she does appear to assert that her guilty plea was unlawfully induced by her counsel and that she is innocent of all charges because she had a paper that authorized her to visit her children.

Petitioner challenged her counsel's effectiveness in relation to her guilty plea and made similar claims regarding her innocence in a petition that she filed pursuant to Pennsylvania's PCRA, and hearings were held on the claims on January 18, 2023 and March 27, 2023. *See Commonwealth v. Weimer*, 2024 WL 3385490 (Pa. Super. July 12, 2024). The PCRA court denied relief, and Petitioner appealed. On appeal, the Superior Court addressed Petitioner's claims as follows:

>     [Petitioner] initially argues that plea counsel, Attorney Meghann Mikluscak-Hewitt, unlawfully induced her to plead guilty. Specifically, [Petitioner] claims that plea counsel, "despite being made specifically aware of both the existence and nature of items of exculpatory evidence[,]" advised [Petitioner] to plead guilty by telling her that she "would be convicted anyway if she didn't take . . . the guilty plea; that [Petitioner]'s name was not thought of respectfully; that if [Petitioner] did not enter a guilty plea . . . she would both muddy her kids, and also cause extra problems; and by way of repeatedly telling [Petitioner]" not to tell the judge she was innocent. [Petitioner] insists these statements caused [Petitioner] to become too frightened to maintain her innocence or to contest the criminal charges at trial.
>
>     Next, [Petitioner] argues that the PCRA court improperly denied her relief where she presented exculpatory after-discovered evidence. Specifically, [Petitioner] claims that she presented evidence of a Protection from Abuse order which proved that [Petitioner] was not evicted and excluded from the residence at issue until June 4, 2021 – after the date on which she allegedly committed criminal trespass. [Petitioner] further contends that she submitted a letter from Phyliis A. Jin, Esq. (who had represented the alleged victims relative to the dependency and termination proceedings involving [Petitioner]'s children), expressly advising [Petitioner] that she was permitted to enter the alleged victims' home to visit her minor children. [Petitioner] insists that introduction of this evidence sooner would have prevented [Petitioner] from entering a guilty plea and would have led to an acquittal had [Petitioner] proceeded to trial. [Petitioner] submits that she did not have the education, knowledge, training, or resources to have obtained these documents without the assistance of counsel, and Attorney Mikulscak-Hewitt, as well as Attorney Nicholas Clark, were ineffective for failing to produce this evidence prior to entry of [Petitioner]'s guilty plea and for inducing [Petitioner] to plead guilty despite this evidence.
>
>     Finally, [Petitioner] claims both Attorneys Mikulscak-Hewitt and Clark were ineffective for failing to observe/notice that [Petitioner] was visibly intoxicated when she entered the guilty plea to an extent that substantially impaired her decision-making ability and ability to understand the proceedings. [Petitioner] insists counsel were ineffective for failing to inform the court about [Petitioner]'s intoxication prior to entry of a guilty plea. [Petitioner] submits that counsel had no reasonable strategic bases for their actions and that she suffered prejudice as a result. [Petitioner] concludes the PCRA court erred by denying relief on these grounds, and this Court must grant relief. We disagree.

*Id*. at *2-3 (internal citations to record omitted).

The Superior Court primarily relied on the PCRA court's analysis in affirming the order denying PCRA relief. It noted that the PCRA court credited the testimony of Attorney Mikluscak

8

who testified at the hearing that she did not make the type of statements that Petitioner alleged were made to her and that she would have agreed to go to trial had Petitioner wanted to do so, although she was not Petitioner's attorney at the time of the plea. The PCRA court did not credit Petitioner's testimony regarding statements made by her attorney or being intoxicated at the time of her plea, specifically noting that the court saw no indicia of intoxication and had no concerns about Petitioner's ability to enter a plea. With regard to the affidavit that Petitioner alleged allowed her onto the victims' property, the PCRA court noted that it was signed when Petitioner relinquished custody of her two older daughters, both now adults, to the victims for adoption in 1996, and that there was no indication that the affidavit was an actual agreement between the parties or that it was currently in effect or was the agreement with respect to her two youngest children, who were also adopted by the victims. Nevertheless, it found that even if the contents of the affidavit continued to be in effect, Petitioner's conduct, including her intoxicated condition, her attempt to force her way into the victims' residence, and then her success in breaking into the house, would have invalidated any agreement. *See id*. at *3-4.

Given the presumption of correctness that this Court must afford to the state court's factual determinations under § 2254(e)(1), and assuming Petitioner is raising, or would raise, the same claims she raised in her PCRA petition, and raised on appeal following the PCRA court's denial of relief, Petitioner has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, or that it resulted in a decision hat was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). In other words, there is no merit to Petitioner's claims and this factor, too, weighs in favor of dismissal.

9

In sum, the undersigned recommends that this case be dismissed because the majority of the *Poulis* factors weigh in favor of dismissal.

## II.     CONCLUSION

For the aforementioned reasons, it is respectfully recommended that this case be dismissed for Petitioner's failure to prosecute.

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:  September 19, 2024.

/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge

Cc:    Carla Jean Weimer
       35 Millview Street
       Uniontown, PA  15401